576 F.2d 77
 18 Fair Empl.Prac.Cas. 102, 17 Empl. Prac.
Dec. P 8416
Samuel E. HEBERT, Individually and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
MONSANTO COMPANY, TEXAS CITY, TEXAS, et al., Defendants-Appellees.
 No. 76-2836.
 United States Court of Appeals,
Fifth Circuit.
 July 10, 1978.
 
 Henry M. Rosenblum, Robert B. O'Keefe, Houston, Tex., for plaintiffs-appellants.
 Wm. N. Wheat, Houston, Tex., for Texas Metal Trades.
 Tom M. Davis, Houston, Tex., for Monsanto Co.
 Appeal from the United States District Court for the Southern District of Texas.
 Before MORGAN and GEE, Circuit Judges, and KING, District Judge.*
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 Appellant appeals the district court's denial of class certification pursuant to FRCP Rule 23. As a basis for its opinion, the court below held that res judicata, or in the alternative, the failure of satisfaction of the statutory requirements preclude class certification. Because we hold that res judicata does not apply, and that the Rule 23 criteria for certification were satisfied, we reverse and remand.
 
 
 2
 Before proceeding to the procedural facts of the case, it is necessary to develop the background history of this class action and the Monsanto Company. In 1971, a class action suit was instituted against Monsanto and the Texas Metal Trade Council, by George Sanders on behalf of all black employees similarly situated. Prior to class certification, the parties presented a consent order for the court's approval. Generally, the consent order provided both injunctive relief against company and union practices and back pay to the affected class. The consent order allowed objecting class members to opt out upon request. Appellant along with 39 other members exercised their right to be excluded.
 
 
 3
 Based upon the 1971 conduct, in July of 1974, appellant Hebert requested and received from the EEOC, a "right to sue" letter, enabling him to proceed in the instant litigation. He then filed this suit on October 1, 1974. Appellee denied the allegations and moved to dismiss the class claim. The court agreed with the appellee holding that the maintenance of the prior class action precluded appellant from taking advantage of the class action mechanism. Additionally, the court held that pursuant to Rule 23(a), neither the numerosity nor the typicality requirements of Rule 23(a) were satisfied. From this order the plaintiff appeals.
 
 
 4
 Before proceeding with the "substantive" issue of this appeal, we must address appellee's contention that the district court lacks jurisdiction. Appellee argues that more than three years elapsed between failure of administrative remedies and institution of suit, in contravention of 42 U.S.C. § 2000e-5(e). Prior to the 1972 amendments, 42 U.S.C. § 2000e-5(e), as judicially construed, provided that the aggrieved must sue within thirty days after notice that administrative remedies were exhausted. In Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5th Cir. 1972), a panel of this court held that in order to activate running of the thirty day limit the aggrieved party must receive a formal notice that administrative remedies are exhausted. 437 F.2d at 1138. We agree with the district court that the missives received by appellant do not satisfy this standard. The letters cursorily state that the commission finds the claims to be unsubstantiated. Nowhere is there notice to the aggrieved that the commission will take no further action. Neither is there notice that the aggrieved is under the burden of proceeding. We therefore hold that appellant did not receive the necessary notice until the "right to sue" letter of July 1974.
 
 
 5
 Even if the EEOC letters did not constitute notice, appellees argue, more than thirty days elapsed between the right to sue letter and filing. This would be the proper legal conclusion if the law as of 1971 were applied. Because no notice was given prior to 1972, however, the 1972 amendments apply; with their longer filing limit. Section 14 of Public Law 92-261 provided:
 
 
 6
 The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act (March 24, 1972) and all charges filed thereafter.
 
 
 7
 Because Hebert did not receive notice of exhaustion until 1974, as far as he or the world knew, his charge was still pending before the commission. Hence, the 1972 amendments are applicable. Because 42 U.S.C. § 2000e-5(e) was amended by 42 U.S.C. § 2000e-5(f)(1) to provide a 90-day filing period, appellant timely filed and jurisdiction exists in the district court.
 
 
 8
 Satisfied with our jurisdictional base, we may now proceed with appellant's contention that the court erred in failing to certify the class. Appellant first contends that the court erred in holding that opting out of the prior class action precluded maintenance of a subsequent class action based on the same claim. Although the court recognized that the consent order, by its terms, provided for dismissal as to optees to be "without prejudice," the court reasoned that the dismissal was without prejudice only to substantive rights not "procedural." Therefore, the court held that although each individual class member could pursue their individual claim, they were precluded from the advantages of the class action procedural machinery. We disagree. The effect of a dismissal without prejudice is to return the party to the position enjoyed prior to suit, absent conditions and notice to the parties of the condition. Prior to the 1971 order, appellant enjoyed the right to access to the class action procedure. Because he was dismissed, he returns to that status. Additionally, this result more readily comports with the purpose of Rule 23, to provide for judicial economy in the litigation of similar claims. As a result of the district court's holding, thirty-nine actions would occur. With no procedural bar, however, one action may suffice the forty claimants. We therefore hold that the court erred in dismissing the class action based upon a res judicata affect of the first class action.
 
 
 9
 In addition to holding that appellant was precluded from maintaining a class action, the court also held that they failed to satisfy the Rule 23(a) requirements of numerosity and typicality. Although we would be prepared to hold that forty members constituted a sufficiently numerous class to satisfy Rule 23, such is not necessary. The court concluded below that the class of new employees was sufficiently numerous. Adding forty members to an already numerous class would certainly not reduce numerosity. Therefore, the class of opt outs and new hires is sufficiently numerous to constitute a class within the scope of Rule 23(a).
 
 
 10
 Finally, appellant contends the court erred in determining that appellant's claim was not representative of the claim of the class. This so-called typicality requirement insures that the class action will not be a mere procedural umbrella for individual claims. Of course, although there need not be identity of claims, there must be common elements of law or fact such that the class action would be an economical way of prosecuting and defending claims. Therefore, the question is whether Hebert's claim of racial discrimination although limited to the particular facts of Hebert's employment history, is nonetheless sufficiently typical of the other members' claims to permit the maintenance of a class action. Appellee contends that because appellant's claim concerns only the trucking activities of the company and other claimants are from different departments, appellant's claim is neither factually nor legally typical. We recognize, however, that the typicality requirement is not so rigid as to comprehend only similar fact situations. If class actions were limited to factual typicality, class actions under Title VII would be impossible because, except in rare cases, the facts would not be identical. It would be a better test for typicality to consider whether the types of facts or evidence were typical of the class. For example, if all claims, although of different job classifications, depended upon statistical evidence, and the statistics evidenced a policy of discrimination, typicality would be satisfied. In the instant case appellant objects to a company-wide pattern of racial discrimination, of which the discrimination practiced against him was merely a part. The same type of evidence will be offered, involving both statistics and historical hiring patterns. The common goal of this evidence is the proof of the question of fact common to all of the class members, the company-wide policy to discriminate. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969). Not only is there typicality of claims, but there is also typicality of interest. All are seeking injunctive relief from an alleged broad based discriminatory network. Finally, it has been recognized that racial discrimination is almost by definition class discrimination and hence the class action is a most appropriate tool for dealing with a problem. Huff v. N.D. Cass Co., 485 F.2d 710, 713-14 (5th Cir. 1973); Georgia Power v. EEOC, 412 F.2d 462, 468 (5th Cir. 1969). Because broadly based racial discrimination by definition is class discrimination, and the same types of evidence will be used, to prove such a broadly based policy, we hold that the court erred in holding that appellant's claim was not typical of the class. Accordingly, we
 
 
 11
 REVERSE and REMAND.
 
 
 
 *
 District Judge for the Southern District of Florida, sitting by designation